## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| RAPHAEL P. ANGELES, | |
| Plaintiff, | Case No. 1:22-cv-00244-SJD |
| v. | District Judge Susan J. Dlott |
| FIRST ADVANTAGE BACKGROUND SERVICES CORP., | |
| Defendant. | |

## DEFENDANT'S ANSWER AND
## AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

## INTRODUCTION

### COMPLAINT ¶1:

Plaintiff, Raphael P. Angeles ("Mr. Angeles"), brings this action for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), by the defendant First Advantage Background Services Corp. ("First Advantage"), which arises out of a background check that falsely portrays Mr. Angeles as a murderer.

### ANSWER:

First Advantage admits that Plaintiff purports to bring this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), but First Advantage denies that it violated the FCRA and further denies that Plaintiff is entitled to any relief whatsoever. First Advantage denies the remaining allegations in Paragraph No. 1 of the Complaint.

### COMPLAINT ¶2:

Mr. Angeles has no criminal record, and First Advantage's representation to contrary, and refusal to correct its false and exceptionally damaging reporting, has caused substantial harm to Mr. Angeles.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegation about whether he has a criminal record. First Advantage denies the remaining allegations in Paragraph No. 2 of the Complaint.

**COMPLAINT ¶3:**

Mr. Angeles's harm includes, *inter alia*, a protracted delay in the anticipated commencement of employment offered to him by Deloitte & Touche LLP ("Deloitte") on March 2, 2022, which was been repeatedly delayed due First Advantage's actions and inactions. Mr. Angeles' harm also includes the ultimate retraction of the offer of employment with Deloitte on May 22, 2022.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 3 of the Complaint.

**COMPLAINT ¶4:**

In addition to lost earning capacity, financial instability, and stagnation of Mr. Angeles's career, First Advantage's actions and inactions have also caused great turmoil for Mr. Angeles, including loss of sleep, anxiety, shock, worry, humiliation, indignation and wasted time.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 4 of the Complaint.

**COMPLAINT ¶5:**

Plaintiff advances a claim for damages based upon two distinct provisions under the FCRA. First, First Advantage violated the FCRA § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy. Second, First Advantage violated the FCRA § 1681i by failing to conduct a reasonable investigation related to adverse and inaccurate information on Plaintiff's consumer report. Raphael P. Angeles seeks redress in the form of actual damages, statutory damages, punitive damages, and recovery of his attorney fees and costs.

**ANSWER:**

First Advantage admits that Plaintiff purports to bring this action under the FCRA and that he seeks actual, statutory, and punitive damages and attorneys' fees and costs, but First Advantage denies that it violated the FCRA and further denies that Plaintiff is entitled to any relief whatsoever. First Advantage denies the remaining allegations in Paragraph No. 5 of the Complaint.

## JURISDICTION AND VENUE

**COMPLAINT ¶6:**

Jurisdiction of this Court is conferred under 28 U.S.C. §§ 1331, and 15 U.S.C. § 1681p.

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 6 of the Complaint.

**COMPLAINT ¶7:**

Venue in this District is proper because First Advantage conducts business in this District and the events or omissions giving rise to this case transpired in this District.

**ANSWER:**

First Advantage admits that venue is proper. First Advantage denies the remaining allegations in Paragraph No. 7 of the Complaint.

## PARTIES

**COMPLAINT ¶8:**

Plaintiff, Raphael Pambid Angeles, is an individual person, and a resident of the state of Ohio. Mr. Angeles is also a "consumer" as defined by the FCRA, 15 U.S.C. §1681a(c).

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 8 of the Complaint.

**COMPLAINT ¶9:**

Defendant, First Advantage Background Services Corp. ("First Advantage") is a "consumer reporting agency" ("CRA") as defined by the FCRA, 15 U.S.C. § 1681a(f). First Advantage has its headquarters in Atlanta, Georgia.

**ANSWER:**

First Advantage admits that some of its business activities make it a "consumer reporting agency" under the FCRA as to those activities only. First Advantage also admits that its headquarters is in Atlanta, Georgia. First Advantage denies the remaining allegations in Paragraph No. 9 of the Complaint.

**COMPLAINT ¶10:**

First Advantage is also a for-profit corporation in the business of selling consumers' reports, in the form of background checks, to third-parties. First Advantage assembles consumer employment, education and court record information, *inter alia*, for the purpose of furnishing these background reports to third-parties. First Advantage will be served through its authorized agent for service of process.

**ANSWER:**

First Advantage admits the allegations in the first two sentences of Paragraph No. 10 of the Complaint and admits that Plaintiff served the Complaint on First Advantage's agent. First Advantage denies the remaining allegations in Paragraph No. 10 of the Complaint.

**COMPLAINT ¶11:**

First Advantage provides tens of millions of background checks yearly.

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 11 of the Complaint.

**COMPLAINT ¶12:**

First Advantage's database has hundreds of millions of criminal records.

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 12 of the Complaint.

**COMPLAINT ¶13:**

First Advantage had access to all necessary information to provide an accurate consumer report, but failed to do so.

**ANSWER:**

First Advantage admits that it had access to the information necessary to prepare an accurate consumer report on Plaintiff. First Advantage denies the remaining allegations in Paragraph No. 13 of the Complaint.

**COMPLAINT ¶14:**

Instead, First Advantage indiscriminately collected information from unreliable sources to create the subject employment screening report. 15 U.S.C. § 1681a(d).

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 14 of the Complaint.

**APPLICATION OF THE FCRA TO EMPLOYMENT BACKGROUND REPORTS**

**COMPLAINT ¶15:**

The scope of the FCRA extends beyond credit reports, and regulates background reports, inter alia, as well.

**ANSWER:**

First Advantage admits that the FCRA regulates conduct relating to certain credit reports, background reports, and other matters. First Advantage denies the remaining allegations in Paragraph No. 15 of the Complaint.

**COMPLAINT ¶16:**

Background reports, such as the report at issue in this case, are "consumer reports" as defined by the FCRA. 15 U.S.C. § 1681a(d).

**ANSWER:**

First Advantage admits that some background reports, such as the report at issue in this case, are "consumer reports" under the FCRA. First Advantage denies the remaining allegations in Paragraph No. 16 of the Complaint.

**COMPLAINT ¶17:**

The FCRA imposes legal duties upon CRAs such as First Advantage, and the "statement of purpose" for the FCRA expressly provides that there is an obligation to ensure that consumer reports are accurate that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

**ANSWER:**

First Advantage admits the FCRA imposes legal duties upon CRAs. First Advantage

denies the remaining allegations in Paragraph No. 17 of the Complaint.

**COMPLAINT ¶18:**

Moreover, under 15 U.S.C. § 1681e(b), CRAs are required "to follow reasonable
procedures to assure maximum possible accuracy of the information concerning the individual
about whom the report relates."

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 18 of the Complaint.

**COMPLAINT ¶19:**

After a CRA receives a dispute from a consumer, that CRA must "conduct a reasonable
reinvestigation to determine whether the disputed information is accurate." 15 U.S.C. §
1681i(a)(1)(A).

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 19 of the Complaint.

**COMPLAINT ¶20:**

First Advantage ignored its legal obligations to consumer as detailed *supra*.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 20 of the Complaint.

**FACTS**

**COMPLAINT ¶21:**

On March 2, 2022, Deloitte offered Mr. Angeles a position with their firm as a Hotel Field
Examiner in the Risk and Financial Advisory group. The position was to pay Mr. Angeles
$52,000.00 annually.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 21 of the Complaint.

**COMPLAINT ¶22:**

The Deloitte offer specified that Mr. Angeles' expected start date would be March 22, 2022

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 22 of the Complaint.

**COMPLAINT ¶23:**

A mandatory part of the process for onboarding with Deloitte required that Mr. Angeles submit to a background check.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 23 of the Complaint.

**COMPLAINT ¶24:**

Mr. Angeles was compliant in all respects with the background check process, and commenced production of information sought by First Advantage on day one (March 2, 2022).

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 24 of the Complaint.

**COMPLAINT ¶25:**

Throughout March 2022 First Advantage requested that Mr. Angeles upload various documents to First. Advantage's portal. The documents requested included, *inter alia*, various forms of identification, including his passport, Green Card, Global Entry, and driver's license ("identification documentation").

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 25 of the Complaint.

**COMPLAINT ¶26:**

First Advantage requested Mr. Angeles produce some of the documents to its portal on multiple occasions, which Mr. Angeles did.

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 26 of the Complaint.

**COMPLAINT ¶27:**

The identification documentation that Mr. Angeles repeatedly produced to First Advantage, at First Advantage's request, corroborated that Mr. Angeles did not have a serious felony on his record as First Advantage reported.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 27 of the Complaint.

**COMPLAINT ¶28:**

Mr. Angeles produced the identification documents to First Advantage both before First Advantage reported false and derogatory information about Mr. Angeles, as well as part of the reinvestigation process.

**ANSWER:**

First Advantage admits that Plaintiff provided identification documents to First Advantage

before the Philippines Litigation/Local component of his background report was completed and

again as part of his dispute. First Advantage denies the remaining allegations in Paragraph No. 28

of the Complaint.

**COMPLAINT ¶29:**

To obtain a Green Card, such as the Green Card Mr. Angeles produced to First Advantage, a rigorous background check is required. This includes biometric screening at a local United States Citizenship and Immigration Services ("USCIS") office or a United States government office in the applicant's home country. At the screening, an officer collects biometric information including photographs, fingerprints, and signature. USCIS uses this biometric information to run a criminal background check in the FBI's database. Crimes involving fraud, rape, and murder are deemed to involve "moral turpitude" and would render an applicant inadmissible to the United States.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 29 of the Complaint.

**COMPLAINT ¶30:**

Similarly, Mr. Angeles's approval for the Global Entry program required a rigorous background check, as well as an in-person interview. Obtaining Global Entry would not have been possible if he was a murderer as First Advantage represented in its report.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 30 of the Complaint.

**COMPLAINT ¶31:**

On March 17, 2022, a representative at Deloitte advised Mr. Angeles that First Advantage had reported a "red flag" in his background check. He was also provided a copy of the background report and learned that the "red flag" indicated that one Rafael Angeles had been charged with murder in the Philippines, and this was being attributed to Mr. Angeles.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 31 of the Complaint.

**COMPLAINT ¶32:**

Mr. Angeles immediately contacted First Advantage to dispute this erroneous and exceptionally derogatory information.

**ANSWER:**

First Advantage admits that Plaintiff disputed information with First Advantage. First

Advantage lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's

allegation about the immediacy of his dispute. First Advantage denies the remaining allegations

in Paragraph No. 32 of the Complaint.

**COMPLAINT ¶33:**

Mr. Angeles informed them that they must have him confused with another person, and noted he does not, and has not, spelled his name "Rafael" as indicated in the report.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 33 of the Complaint.

**COMPLAINT ¶34:**

As part of the dispute process, First Advantage required that Mr. Angeles submit the same identification documentation he had previously requested.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 34 of the Complaint.

**COMPLAINT ¶35:**

On March 18, 2022, a representative at Deloitte telephoned Mr. Angeles to inform him that his start date would be delayed a week, until March 28, 2022, because of the First Advantage "red flag."

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 35 of the Complaint.

**COMPLAINT ¶36:**

On March 28, 2022, Mr. Angeles was informed that the "red flag" on his background check still had not been cleared, and his new start date with Deloitte was delayed again, until April 4, 2022.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 36 of the Complaint.

**COMPLAINT ¶37:**

On April 1, 2022, Mr. Angeles was notified that his new start date with Deloitte was delayed yet again, this time until April 11, 2022.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 37 of the Complaint.

**COMPLAINT ¶38:**

Each delay in Mr. Angeles' starts date with Deloitte was because of the "red flag" on his First Advantage background report.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 38 of the Complaint.

**COMPLAINT ¶39:**

Mr. Angeles made repeated inquiries during this period of delays due to his First Advantage background report, and the "red flag" thereon, only to be advised that his background check was still in the process of review and investigation.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 39 of the Complaint.

**COMPLAINT ¶40:**

Mr. Angeles also made repeated disputes to First Advantage during this period in an effort to resolve the erroneous "red flag" issue, and procure the Deloitte position that had been offered to him.

**ANSWER:**

First Advantage admits that Plaintiff disputed information in his report. First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 40 of the Complaint.

**COMPLAINT ¶41:**

On April 15, 2022, Mr. Angeles was advised that the background investigation was still ongoing, and his start date would be delayed until April 25, 2022.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 41 of the Complaint.

**COMPLAINT ¶42:**

During each delay Mr. Angeles was without gainful employment, and waiting for the commencement of the job with Deloitte, which he was offered, and desired.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph No. 42 of the Complaint.

**COMPLAINT ¶43:**

Mr. Angeles knew, as he told First Advantage, that he had no criminal background, the "red flag" murder in the Philippines was inaccurately attributed to him by First Advantage, and that is appeared they had him confused with someone else, who also spelled his first named differently (Rafael, not Raphael).

**ANSWER:**

First Advantage admits that Plaintiff told First Advantage that he had never been arrested or convicted and that the disputed criminal record did not belong to him.  First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 43 of the Complaint.

**COMPLAINT ¶44:**

On April 19, 2022, pursuant to Mr. Angeles' repeated inquiries with First Advantage, First Advantage advised its investigation was closed, and the information remained.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 44 of the Complaint.

**COMPLAINT ¶45:**

On April 19, 2022, First Advantage sent Mr. Angeles the following electronic mail correspondence:

**From:** APAC.GlobalScreening@fadv.com
**Date:** April 19, 2022 at 11:11:35 PM EDT
**To:** angeles.raphael00@gmail.com
**Subject: RE: CID 219715140**
**Reply-To:** APAC.GlobalScreening@fadv.com
Hi team,

Please note the search is closed as per the veridiction received , How ever
to re work the search please ask the client to reorder the search .

regards,
Global operations.

**ANSWER:**

Upon information and belief, First Advantage admits the allegations in Paragraph 45 of the

Complaint.

**COMPLAINT ¶46:**

On April 21, 2022, Mr. Angeles procured his own background check with Global
Background Screening ("GBS"), which included an international criminal search in the
Philippines.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 46 of the Complaint.

**COMPLAINT ¶47:**

The GBS report found no Metropolitan, Municipal, or Regional record attributable to Mr.
Angeles in the Philippines.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 47 of the Complaint.

**COMPLAINT ¶48:**

In further attempts to resolve First Advantage's error and move forward with Deloitte, Mr. Angeles forwarded a copy of the GBS report to First Advantage and to the First Advantage Executive Vice President, Bret Jardine.

On April 22, 2022, Shaqualla Johnson of Deloitte informed Mr. Angeles that his start date would be delayed again. Ms. Johnson's email made clear that all orientation and invitations extended by Deloitte were revoked pending the continued background investigation, stating in part:

> **Please disregard DLaunch/orientation invitations/communications you may have received for your previous scheduled start date of 04/25/2022.** If you already made travel reservations, call BCD Travel at 1-877-526-6050 to cancel asap. Let me know if you have additional questions.
>
> *Please reply to this message to confirm receipt and acknowledge your understanding of your current status.*

**ANSWER:**

First Advantage admits that Plaintiff e-mailed two documents that purport to be personal background checks by Global Background Screening to First Advantage, including to Bret Jardine, First Advantage's Executive Vice President, General Counsel & Corporate Secretary. First Advantage lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph No. 48 of the Complaint.

**COMPLAINT ¶49:**

These repeated delays and retractions of invitations and offers not only harmful to Mr. Angeles financially, while he was deprived of a job opportunity solely because of the false "red flags," but these events were also humiliating and degrading to Mr. Angeles both personally and professionally.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 49 of the Complaint.

**COMPLAINT ¶50:**

The very same day, on April 22, 2022, Natalie Barge of Deloitte emailed Mr. Angeles, making it clear the Deloitte job offer was rescinded due to the "red flags." Ms. Barge's email stated:

> **From:** "Barge, Natalie" <nbarge@deloitte.com>
> **Date:** April 22, 2022 at 5:03:21 PM EDT
> **To:** "Raphael Angeles (EXTERNAL)" <angeles.raphael00@gmail.com>
> **Subject: Deloitte iPad Return Instructions**
>
> Hello Raphael,
>
> I'm sorry to hear that you will not be joining the firm. We wish you the best of luck on your future endeavors.
>
> **To return your iPad, please follow these directions:**
> 1. If you turned on and completed any set-up on your iPad, do the following to remove iCloud and pin from iPad:
> a. Remove Apple ID from device: Settings > Click your name at the top > Sign Out
> b. Remove pin – Settings > Touch ID & Passcode > tap "iPhone Unlock" and then tap "Turn Passcode Off"
> 2. Print the attached UPS shipping label
> 3. Draft a note to include in your return with the iPad that includes:
> a. First, Last, email address
> b. Pin (if haven't been removed)
> c. iCloud username/password (if haven't been removed)
> 1. Take iPad, its accessories, shipping label, and note to UPS and ask them to package all of the items and send to the address on label
> 1. Once done, please email me to confirm it is in the mail and we can begin tracking via the UPS tracking number
>
> Let me know if there is anything more I can do to help.
>
> Thank you!
>
> **Natalie Barge Kerekes**
> Solution Delivery Manager | **Brand Operations Services**
> Deloitte & Touche LLP
> 200 Berkeley Street, 10th Floor, Boston, MA, 02116
> Office: +1 305 808 2485 | Mobile: +1 305 794 9425

**ANSWER:**

First Advantage denies that the communication quoted in Paragraph No. 50 of the

Complaint makes clear that Deloitte rescinded a job offer due to "red flags." First Advantage lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph No. 50 of the Complaint.

**COMPLAINT ¶51:**

On April 23, 2022, Mr. Angeles emailed several contacts at Deloitte, as well as his recruiter inquiring about Ms. Barge's email.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 51 of the Complaint.

**COMPLAINT ¶52:**

On April 25, 2022, Mr. Angeles' recruiter confirmed Deloitte had rescinded the job offer and that he should expect an adverse action notice in the corning days.

**ANSWER:**

First Advantage lacks knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph No. 52 of the Complaint.

**COMPLAINT ¶53:**

First Advantage reported derogatory and inaccurate information related to Plaintiff and his background to third parties, including Deloitte.

**ANSWER:**c

First Advantage denies the allegations in Paragraph No. 53 of the Complaint.

**COMPLAINT ¶54:**

The First Advantage Report Print Date was April 18, 2022, but according to the First Advantage Report, the information obtained by First Advantage for "Philippines Litigation/Local" was completed on March 14, 2002.

**ANSWER:**

First Advantage admits that the copy of the report that First Advantage sent to Plaintiff on

April 18, 2022 listed April 18, 2022 as the date that copy of the report was printed and listed April

14, 2022 as the date that the Philippines Litigation/Local component was completed. First

Advantage denies the remaining allegations in Paragraph No. 54 of the Complaint.

**COMPLAINT ¶55:**

The inaccurate information on the First Advantage included, inter alia, that on January 26, 2013 there was a murder case filed against Mr. Angeles.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 55 of the Complaint.

**COMPLAINT ¶56:**

The First Advantage report provides that adverse findings were found related to Mr. Angeles, stating in part as follows:

POSSIBLE RECORDS FOUND:NAME MATCH. ANGELES RAFAEL

CASE NUMBER: 346-M-2013

COURTS: REGIONAL TRIAL COURT ADDRESS:

BRANCH: 22

CASE TYPE: MURDER

AMOUNT: 0

PLAINTIFF NAME: PEOPLE OF THE PHILIPPINES ACTION:

UNAVAILABLE

DATE FILED: 01/26/2013

ACTION DATE:

CITY: MALOLOS BULACAN

REMARKS:

Remark

RESULTS RECEIVED

ATTEMPT NUMBER: 1

FOLLOW-UP DATE: NA

SOURCE OF CONTACT: ONLINE

OBJECTION QUESTION TO DISCLOSURE: NA

COMPANY CONTACT CONFIRMED: YES

VERIFIED BY RECORD: CIBI

NUMBER OF COMBINATIONS: 2

NUMBER OF HITS: 1

ANY ADVERSE FINDINGS: YES

ADDITIONAL INFORMATION: RECEIVED RESULT ONLINE, POSSIBLE MATCH

**ANSWER:**

First Advantage admits that the copy of the report sent to Plaintiff on April 18, 2022 includes the language quoted. First Advantage denies the remaining allegations in Paragraph No. 56 of the Complaint.

**COMPLAINT ¶57:**

The false information reflects detrimentally upon Mr. Angeles and his suitability as a trustworthy employee.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 57 of the Complaint.

**COMPLAINT ¶58:**

First Advantage's reporting of this false and derogatory information through the issuance of an inaccurate consumer background report to Deloitte resulted in the delay, and ultimate loss, of a job opportunity for Mr. Angeles.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 58 of the Complaint.

**COMPLAINT ¶59:**

As a direct and proximate result of First Advantage's actions and omissions, Mr. Angeles spent exorbitant amounts of time submitting (and resubmitting) documents to First Advantage, disputing the false information with First Advantage and Deloitte, delayed procurement of other employment based on the reasonable presumption First Advantage would correct its error, and also suffered great stress and turmoil as result, as more fully described supra.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 59 of the Complaint.

**COMPLAINT ¶60:**

With respect to Mr. Angeles's written disputes lodged with First Advantage, he immediately disputed the false information and fully complied with every request First Advantage made to further supplement his file, even when the documents First Advantage requested he provide had previously been given to First Advantage as part of the process of conducting his background check.

**ANSWER:**

First Advantage lacks knowledge or information as to the truth of Plaintiff's allegations about the immediacy of his dispute. First Advantage denies that Plaintiff disputed his report more than once. Upon information and belief, First Advantage admits the remaining allegations in Paragraph No. 60 of the Complaint.

**COMPLAINT ¶61:**

With respect to all disputes referenced in this Complaint, Plaintiff was compliant, prompt and responsive to all correspondence, requests for information and documentation from First Advantage.

**ANSWER:**

First Advantage denies that Plaintiff disputed his report more than once. Upon information and belief, First Advantage admits the remaining allegations in Paragraph No. 61 of the Complaint.

**COMPLAINT ¶62:**

At all times relevant, Plaintiff has taken steps to mitigate his damages by disputing the inaccurate information with First Advantage.

**ANSWER:**

First Advantage admits that Plaintiff disputed information in his report. First Advantage

denies the remaining allegations in Paragraph No. 62 of the Complaint.

**COMPLAINT ¶63:**

Despite Mr. Angeles's disputes and compliance, First Advantage continued reporting the false and derogatory information about him.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 63 of the Complaint.

**COMPLAINT ¶64:**

First Advantage refused to correct Mr. Angeles's report.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 64 of the Complaint.

**COMPLAINT ¶65:**

All of Mr. Angeles's written disputes and correspondence to First Advantage were sent via electronic mail, and via the portal, as instructed or requested by First Advantage.

**ANSWER:**

First Advantage denies that Plaintiff disputed his report more than once. First Advantage

admits the remaining allegations in Paragraph No. 65 of the Complaint.

**COMPLAINT ¶66:**

First Advantage's failure to conduct a reasonable investigation and willful noncompliance with the FCRA resulted in adverse events for Mr. Angeles as discussed herein.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 66 of the Complaint.

## **FIRST ADVANTAGE ACTED WILLFULLY**

**COMPLAINT ¶67:**

First Advantage knew or should have known that its actions and omissions violated the FCRA. These obligations are well-established in the plain language of the FCRA.

**ANSWER:**

First Advantage was and is aware of its obligations under the FCRA. First Advantage denies the remaining allegations in Paragraph No. 67 of the Complaint.

**COMPLAINT ¶68:**

First Advantage procured or had available to it, substantial written materials that informed it of its duties under the FCRA.

**ANSWER:**

First Advantage was and is aware of its duties and obligations under the FCRA. First Advantage denies the remaining allegations in Paragraph No. 68 of the Complaint.

**COMPLAINT ¶69:**

First Advantage knows that it is common for criminal records to be erroneously attributed to the wrong person.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 69 of the Complaint.

**COMPLAINT ¶70:**

First Advantage, and its predecessor LexisNexis Screening Solutions, Inc., have been sued repeatedly for erroneously reporting criminal information regarding consumers.

**ANSWER:**

First Advantage admits that it and LexisNexis Screening Solutions, Inc. have been sued by consumers for allegedly reporting inaccurate criminal information about the consumers. First Advantage denies the remaining allegations in Paragraph No. 70 of the Complaint.

**COMPLAINT ¶71:**

Despite knowing its legal obligations, First Advantage consciously breached its known duties and deprived Mr. Angeles and of his rights under the FCRA.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 71 of the Complaint.

**COMPLAINT ¶72:**

First Advantage's failure to conduct a reasonable reinvestigation into Plaintiff's disputes was the result of First Advantage's intentionally-adopted policies and procedures.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 72 of the Complaint.

**COMPLAINT ¶73:**

As a result of these FCRA violations, First Advantage is liable to Mr. Angeles for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2) for each of the violations alleged herein, and for attorneys' fees and costs pursuant to §1681n and §1681o.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 73 of the Complaint.

**COUNT ONE: VIOLATION OF THE FCRA § 1681e(b)**

**COMPLAINT ¶74:**

Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

**ANSWER:**

First Advantage restates its answers to Paragraphs Nos. 1 through 73 of the Complaint as its answer to Paragraph No. 74 of the Complaint.

**COMPLAINT ¶75:**

This claim arises under FCRA § 1681e(b), for preparing consumer reports without following reasonable procedures to assure maximum possible accuracy.

**ANSWER:**

First Advantage admits that Plaintiff brings this claim under Sections 1681e(b), 1681n, and 1681o of the FCRA.

**COMPLAINT ¶76:**

First Advantage unreasonably and willfully failed to check the underlying court records, and failed to ensure names matched before issuing Mr. Angeles's erroneous report to Deloitte.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 76 of the Complaint.

**COMPLAINT ¶77:**

First Advantage failed to distinguish Raphael P. Angeles from a Rafael Angeles, and attributed murder charges of a Rafael Angeles to Plaintiff, Raphael P. Angeles.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 77 of the Complaint.

**COMPLAINT ¶78:**

First Advantage used to few identifiers to attribute a murder charge to Mr. Angeles, thus failing its legal obligation to follow reasonable procedures to assure maximum possible accuracy of the information concerning Mr. Angeles.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 78 of the Complaint.

**COMPLAINT ¶79:**

First Advantage's actions and omissions were in reckless disregard of the requirements of 15. U.S.C. § 1681e(b).

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 79 of the Complaint.

**COMPLAINT ¶80:**

First Advantage's actions and omissions were willful, and First Advantage is therefore liable for punitive damages under 15 U.S.C. § 1681n.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 80 of the Complaint.

**COMPLAINT ¶81:**

Alternatively, First Advantage negligently violated 15 U.S.C. § 1681e(b), entitling Mr. Angeles to relief under 15 U.S.C. § 1681o.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 81 of the Complaint.

**COMPLAINT ¶82:**

First Advantage's violations of the Fair Credit Reporting Act have caused great and irreparable injury to Mr. Angeles. Mr. Angeles has suffered damages including, but not limited to, loss of prospective employment and wages and benefits, lost economic opportunities and positions and advances in the future, damage to his reputation, humiliation, physical pain and suffering, emotional distress, lasting psychological damage, mental anguish, loss of capacity for enjoyment of life, embarrassment, and other losses that are continuing in nature.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 82 of the Complaint.

**COUNT TWO: VIOLATION OF THE FCRA § 1681i**

**COMPLAINT ¶83:**

Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

**ANSWER:**

First Advantage restates its answers to Paragraphs Nos. 1 through 73 of the Complaint as its answer to Paragraph No. 83 of the Complaint.

**COMPLAINT ¶84:**

This claim arises under FCRA § 1681i.

**ANSWER:**

First Advantage admits that Plaintiff purports to bring this claim under Sections 1681i, 1681n, and 1681o of the FCRA.

**COMPLAINT ¶85:**

First Advantage issued, assembled, transferred, and published "consumer reports," regarding Plaintiff, as defined in the Fair Credit Reporting Act.

**ANSWER:**

First Advantage admits the allegations in Paragraph No. 84 of the Complaint.

**COMPLAINT ¶86:**

First Advantage continually added, stored, maintained, and disseminated personal data about Plaintiff, which was false, erroneous, and misleading, without employing procedures to ensure the maximum possible accuracy of the information posed to Plaintiff's consumer reports and disseminated the same to third parties.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 86 of the Complaint.

**COMPLAINT ¶87:**

First Advantage, through its actions and inactions as described herein, caused great and irreparable injury to Plaintiff.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 87 of the Complaint.

**COMPLAINT ¶88:**

First Advantage failed to invoke necessary functions, procedures, or programs designed to ensure that false data and/or data attributable to other persons would not post on Plaintiffs consumer report, and would be suppressed from appearing on Plaintiffs consumer report.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 88 of the Complaint.

**COMPLAINT ¶89:**

First Advantage unreasonably and willfully failed to check the underlying court records, and failed to ensure names and dates matched as part of its reinvestigation of Mr. Angeles's dispute.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 89 of the Complaint.

**COMPLAINT ¶90:**

First Advantage created, maintained, and utilized a consumer reporting system that is defective, and does not comply with the Fair Credit Reporting Act, or other laws governing the First Advantage's actions.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 90 of the Complaint.

**COMPLAINT ¶91:**

First Advantage improperly posted data to Plaintiff's files.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 91 of the Complaint.

**COMPLAINT ¶92:**

First Advantage acted with actual malice and/or with willful intent to injure Plaintiff.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 92 of the Complaint.

**COMPLAINT ¶93:**

First Advantage defamed Plaintiff by publishing false information regarding Plaintiffs criminal history to third parties.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 93 of the Complaint.

**COMPLAINT ¶94:**

First Advantage invaded Plaintiff's reasonable expectation of privacy.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 94 of the Complaint.

**COMPLAINT ¶95:**

First Advantage failed its respective duty to prevent foreseeable injury to Plaintiff.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 95 of the Complaint.

**COMPLAINT ¶96:**

First Advantage, through its actions and inactions, as described herein, caused great and irreparable harm to Plaintiff.

**ANSWER:**

First Advantage denies the allegations in Paragraph No. 96 of the Complaint.

WHEREFORE, Plaintiff prays for relief as follows:

1.    Compensatory damages in an amount to compensate Plaintiff for his personal damages;

2.    Statutory damages;

3.    Punitive damages in an amount greater than $75,000.00;

4.    Equitable and/or declaratory relief;

5.    Attorneys' fees, expenses and costs;

6.    Pre-judgment and post-judgment interest as provided by law; and

7.    Such other relief the Court does deem just, equitable and proper.

**ANSWER:**

These allegations constitute a prayer for relief requiring neither an admission nor a denial by First Advantage. To the extent an answer is required, First Advantage denies that Plaintiff is entitled to any relief whatsoever.

**JURY DEMAND**

Plaintiff demands a trial by jury.

**ANSWER:**

First Advantage admits that Plaintiff demands a trial by jury.

**AFFIRMATIVE DEFENSES**

**FIRST DEFENSE**

Plaintiff is not entitled to punitive damages because First Advantage engaged in good faith efforts to comply with the FCRA, and any purported violation was not willful.

## **SECOND DEFENSE**

To the extent Plaintiff has failed to mitigate his alleged damages, any recovery should be reduced accordingly.

Respectfully submitted,

FIRST ADVANTAGE BACKGROUND SERVICES CORP.

By:  /s/ *William B. Hill Jr.*

William B. Hill Jr.
wbhill@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, Georgia 30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Elizabeth Callan (0078969)
eacallen@vorys.com
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street, Suite 3500
Great American Tower
Cincinnati, Ohio 45202
Telephone:  (513) 723-4016
Facsimile:  (513) 723-4056

*Attorneys for Defendant*

Date:  July 20, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

RAPHAEL P. ANGELES,

        Plaintiff,

        v.

FIRST ADVANTAGE BACKGROUND
SERVICES CORP.,

        Defendant.

Case No. 1:22-cv-00244-SJD

District Judge Susan J. Dlott

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on July 20, 2022, I electronically filed DEFENDANT'S ANSWER

AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT with the Clerk of Court

using the CM/ECF system, which will send e-mail notification of such filing to all attorneys of

record:

              By:   */s/ William B. Hill Jr.*
                      William B. Hill Jr.